UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Country Mutual Insurance Company,           Case No. 14-cv-1343 (PAM/TNL)

        Plaintiff,

v.           **MEMORANDUM AND ORDER**

Eric J. Orloske and Destiny A. Denton, as
trustee for the heirs and next of kin of
Brian S. Orloske,

        Defendants.

_____

This matter is before the Court on Country's Motion for Summary Judgment. For the reasons that follow, the Court grants the Motion.

**BACKGROUND**

In this insurance case, Country Mutual Insurance Company is suing Eric Orloske and Destiny Denton, as trustee for the heirs and next of kin of Brian Orloske, for a declaratory judgment that it does not have a duty to defend or indemnify Eric in a wrongful-death action brought by Denton for the shooting death of Brian.

On the evening of March 6, 2010, Brian was visiting his brother, Eric, at Eric's home in St. Paul. (Warner Aff. (Docket No. 22) Ex. 1, at 10.) The two were drinking a substantial amount of alcohol. (Id.) Later in the evening, Eric became upset with Brian for damaging some property and told him to leave. (Id. at 15-16.) When Brian refused, Eric sought to scare him off and went upstairs to retrieve a shotgun, which was loaded. (Id. at 15-17.) As Eric came downstairs, he lost his balance at the bottom of the stairs

and fell. (Id. at 11.) The shotgun discharged during the fall and the bullet struck Brian in the head, killing him. (Id. at 18-19.)

Eric was charged with murder in the second degree and manslaughter in the second degree, and ultimately pleaded guilty to and was convicted of the latter charge. (Id. at 6-7; Warner Aff. Ex. 2, at 1.) Second-degree manslaughter in Minnesota criminalizes a person who causes the death of another "by the person's culpable negligence whereby the person creates an unreasonable risk, and consciously takes chances of causing death or great bodily harm to another." Minn. Stat. § 609.205, subd. 1. Eric admitted that he committed culpable negligence by taking an unreasonable risk that caused Brian's death when he brandished a loaded shotgun around him while heavily intoxicated. (Warner Aff. Ex. 1, at 19.)

After the criminal proceedings ended, Denton, on behalf of Brian's estate, brought a wrongful-death action against Eric in state court. (Weidner Aff. (Docket No. 22) Ex. A.) Denton alleged that Eric's negligence caused Brian's death. (Id. at 2.) And given his negligence, she requested damages for loss of comfort and support, medical and funeral expenses, and other monetary losses. (Id.)

Seeking defense against and indemnification for the wrongful-death action, Eric made an insurance claim to Country. (See Weidner Aff. Ex. B.) Eric had purchased a home insurance policy from Country with a $500,000 liability limit, subject to a $500 deductible. (Compl. (Docket No. 1) Ex. B.) The policy grants coverage for an action "brought against [Eric] for damages because of bodily injury . . . caused by an occurrence," and defines "occurrence" as an "accident" resulting in "bodily injury" and

"bodily injury" as "physical injury to a person." (Id. at 2-3, 5.)  But the policy excludes from coverage bodily injury "arising from any criminal act" and defines a "criminal act" as "any act or omission which is criminal in nature . . . regardless of whether [Eric] is actually charged with or convicted of a crime and regardless of whether [Eric] subjectively intended the bodily injury for which a claim is made." (Id. at 6-7.) Asserting that the criminal-acts exclusion barred coverage of the wrongful-death action, Country denied Eric's claim and declined to defend or indemnify him. (Weidner Aff. Ex. B.)

Denton and Eric eventually submitted to binding arbitration. (See Weidner Aff. Ex. D.) The arbitrator awarded Orloske's estate damages of $3,150,000. (Id.) Denton and Eric agreed to a Miller-Shugart settlement,[1] and the state court approved the settlement as reasonable and entered the stipulated judgment. (Weidner Aff. Ex. E.)

Country then sued Eric and Denton in this Court, asking for a declaratory judgment that it does not have a duty to defend or indemnify Eric in the wrongful-death action under the policy. (Compl. ¶¶ 28-31.) Eric and Denton answered. (Ans. (Docket No. 7).) Country now moves for summary judgment.

**DISCUSSION**

Summary judgment should be granted if the moving party shows that there are no genuine disputes of material fact and that it is entitled to judgment as a matter of law.

---

[1] Under a Miller-Shugart settlement, an insured who has been denied coverage stipulates with the underlying plaintiff that the insured allow a judgment be entered against it on the condition that the underlying plaintiff release the insured from personal liability and collect on the judgment from the insurer directly. See Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982).

Fed. R. Civ. P. 56(a).  A fact is material if its resolution affects the outcome of the case. Paine v. Jefferson Nat'l Life Ins. Co., 594 F.3d 989, 992 (8th Cir. 2010).  A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. Id.  When evaluating a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor.  Marlowe v. Fabian, 676 F.3d 743, 746 (8th Cir. 2012).

The material facts, as relevant here, are undisputed.  The issue that remains is whether, as a matter of law, the insurance policy requires Country to defend or indemnify Eric in the wrongful-death action.  To decide that issue, the Court must interpret the policy's terms and determine whether those terms cover the action.

When interpreting an insurance policy, the Court—a federal court sitting in diversity—applies state substantive law.  E-Shops Corp. v. U.S. Bank Nat'l Ass'n, 678 F.3d 659, 663 (8th Cir. 2012).  The parties agree that the law of Minnesota, the forum state, should govern.  Under Minnesota law, the interpretation of an insurance policy is a question of law.  Thommes v. Milwaukee Ins. Co., 641 N.W.2d 877, 879 (Minn. 2002). Minnesota courts interpret an insurance policy, like all contracts, to "give effect to the intentions of the parties as reflected in the terms" of the policy.  Midwest Family Mut. Ins. Co. v. Wolters, 831 N.W.2d 628, 636 (Minn. 2013) (citation and quotation marks omitted).  If the policy language is clear and unambiguous, its plain meaning must be enforced.  Travelers Indem. Co. v. Bloomington Steel & Supply Co., 718 N.W.2d 888, 894 (Minn. 2006).  But if the policy language is ambiguous—in that it is susceptible to

4

two or more reasonable interpretations—the policy is to be construed against the insurer who drafted it and in favor of the insured. Id.

In determining coverage under an insurance policy, Minnesota courts use a burden-shifting framework. See Wolters, 831 N.W.2d at 636. The insured initially bears the burden of proving that the claim falls within the policy's grant of coverage. Id. The insurer then carries the burden of showing that the claim satisfies one of the policy's exclusions to coverage. Id. Once the insurer shows that an exclusion applies, the burden of proof shifts back to the insured to identify an exception to the exclusion that restores coverage. Id.

The parties do not dispute that the wrongful-death action, which seeks damages for Eric's negligence causing Brian's death, falls within the policy's grant of coverage. Instead, they dispute that the action satisfies the policy's criminal-acts exclusion to coverage. Country argues that it does because Eric pleaded guilty to second-degree manslaughter for Brian's death.

Country has met its burden of showing that the criminal-acts exclusion bars coverage of the wrongful-death action. The criminal-acts exclusion unambiguously precludes coverage for bodily injury due to an act that is criminal in nature, even if the actor is never charged with or convicted of a crime and even if the actor did not subjectively intend the resulting bodily injury. At the plea hearing, Eric testified that he acted with culpable negligence by taking an unreasonable risk that caused Brian's death when he brandished a loaded shotgun around him while heavily intoxicated. That act checks all of the criminal elements of second-degree manslaughter in Minnesota. And it

is irrelevant whether Eric was actually charged with and convicted of that offense—though he was—or subjectively intended to kill Brian.  Because the wrongful-death action alleges that the same criminal act caused Brian's death, it fits within the criminal-acts exclusion.

As Country has shown that the criminal-acts exclusion applies, Eric and Denton have the burden to identify an exception to the exclusion that restores coverage. Grasping for an exception, they hinge their hopes on the reasonable-expectations doctrine and the overbroad scope of the exclusion.  Neither ground constitutes a meritorious exception.

First, Eric and Denton contend that applying the criminal-acts conclusion to bar coverage of the wrongful-death action contradicts Eric's reasonable expectation that the policy would cover negligent criminal acts.  Under the reasonable-expectations doctrine, the Minnesota Supreme Court has acknowledged the disparate bargaining power in an insurance transaction and has interpreted exclusions "narrowly against the insurer" and "according to the reasonable expectations of the insured."  Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co., 366 N.W.2d 271, 276-77 (Minn. 1985).  In Atwater, for example, the Court refused to enforce the literal definition of burglary in a burglary insurance policy, where the definition was effectively an exclusion and enforcing the definition would defeat the insured's reasonable expectations about the policy's coverage.  Id. at 275-79. But since Atwater, the Court has restricted the use of the reasonable-expectations doctrine to "extreme situations" where the exclusion was ambiguous or obscure.  Carlson v. Allstate Ins. Co., 749 N.W.2d 41, 49 (Minn. 2008).  Thus in Carlson, the Court

declined to apply the doctrine and allow coverage under an uninsured motorist insurance policy when doing so would ignore policy language that unambiguously denied coverage. Id. at 49-50.

In light of Carlson, the reasonable-expectations doctrine does not apply because the criminal-acts exclusion is neither ambiguous nor obscure. The exclusion clearly omits from coverage a criminal act regardless of charge and conviction or subjective intent. And the exclusion is not hidden in the definitions section but appears exactly where an insured would expect: as a separately numbered and boldly titled paragraph in the exclusions section. The Court will not wield Eric's asserted reasonable expectations to thwart the criminal-acts exclusion's plain and obvious nature.

Undaunted, Eric and Denton insist that another case from this District applying the reasonable-expectations doctrine to void a criminal-acts exclusions is on all fours with this case and compels the same result. See Tower Ins. Co. v. Judge, 840 F. Supp. 679, 691-93 (D. Minn. 1993) (holding that, where extremely intoxicated teenagers accidentally killed an unconscious friend by attempting to shock him awake with electric current, a home insurance policy covered the ensuing wrongful-death action—even though the teenagers' reckless act fell within the policy's unambiguous criminal-acts exclusion—because the exclusion conflicted with the insured's reasonable expectation that the "exclusion would not apply unless bodily injury was a reasonably expected result of the act"). Tower is an outlier and has no force here. It was decided before Carlson and used the reasonable-expectations doctrine to vitiate a clear and unhidden exclusion. It also runs contrary to other cases that have refused to apply the doctrine outside of

7

Carlson's narrow parameters. See, e.g., Babinski v. Am. Fam. Ins. Grp., 569 F.3d 349, 353 (8th Cir. 2009); W. Bend Mut. Ins. Co. v. Allsate Ins. Co., 776 N.W.2d 693, 701 (Minn. 2009).

Second, Eric and Denton contend that the criminal-acts exclusion cannot mean what it says because it is overbroad in scope. In particular, they warn that the exclusion could have limitless application given that it extends to conduct that either is not charged and convicted under a criminal statute or is unintentional. Here, at least, Eric and Denton's dire warnings cause no need to sound the alarm. Eric was charged with and convicted of a criminal act, so he cannot complain about a hypothetical circumstance in which he was not. And absent specific contrary language, criminal-acts exclusions are enforceable against both intentional and negligent criminal acts. See Progressive N. Ins. Co. v. McDonough, 608 F.3d 388, 391-92 (8th Cir. 2012) (concluding that an insurer "does not need to prove intent" for a criminal-acts exclusion to apply when the "plain language" of the exclusion "has no intent requirement"); Liebenstein v. Allstate Ins. Co., 517 N.W.2d 73, 75-76 (Minn. App. 1994) (concluding that to trigger a criminal-acts exclusion, an insurer must show that "the insured committed a criminal act" and not that "an insured possessed an intent to injure").[2]

---

[2] At oral argument, Eric and Denton presented a novel argument: the criminal-acts exclusion does not apply because the act of shooting Brian is not criminal, only the result of killing Brian is criminal. That argument fails on legal and practical levels. Legally, the statute for second-degree manslaughter criminalizes both the act of culpable negligence and the result of causing death. See Minn. Stat. § 609.205, subd. 1. The act and the result equally determine the type and degree of the crime at issue. And practically, it simply defies common sense to say that it is criminal to kill a person but it is not criminal to shoot a person.

In the end, Country has shown that the criminal-acts exclusion bars coverage of the wrongful-death action, and Eric and Denton have failed to identify an exception to the exclusion that restores coverage. Country therefore does not have a duty to defend or indemnify Eric in the action.

**CONCLUSION**

The insurance policy's criminal-acts exclusion bars coverage of the wrongful-death action. Accordingly, **IT IS HEREBY ORDERED** that:

1. Country's Motion for Summary Judgment (Docket No. 19) is **GRANTED**; and

2. Country does not have a duty to defend or indemnify Eric in the wrongful-death action under the policy.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: December 16, 2014              *s/ Paul A. Magnuson*
                                      Paul A. Magnuson
                                      United States District Court Judge